# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF HUMAN SERVICES,** | : | **CIVIL ACTION NO. 1:15-CV-1169** |
| | : | |
| | : | **(Chief Judge Conner)** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and SYLVIA MATHEWS BURWELL, SECRETARY OF HEALTH AND HUMAN SERVICES,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

The Commonwealth of Pennsylvania Department of Human Services ("Commonwealth") appeals the decision of the United States Department of Health and Human Services Departmental Appeals Board ("Appeals Board") concerning a Medicaid reimbursement dispute. The Centers for Medicare & Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services, disallowed $3,001,536 in federal funding claimed by the Commonwealth. The Appeals Board sustained the disallowance. The Commonwealth contests this decision in its motion (Doc. 17) for summary judgment. Defendants have filed a cross-motion (Doc. 24) for summary judgment in support of the Appeals Board's decision, as well as a motion (Doc. 32) to exclude the Commonwealth's Exhibit A.

## I.   __Factual Background & Procedural History__[1]

The Commonwealth participates in the Medicaid program, which is jointly funded by state and federal governments.  (Doc. 19 ¶¶ 2-3; see Doc. 26 at 2).  CMS is the Department of Health and Human Services' subdivision that controls the federal government's role in Medicaid by determining federal financial participation in states' Medicaid plans.  (Doc. 26 at 2-3; see Doc. 18 at 2).  The federal government reimburses state Medicaid costs at varying rates depending upon the type of expenditure.  (Doc. 19 ¶ 3; Doc. 26 at 3-4).  The federal financial participation rate is 50% for most costs associated with "administration" of the Medicaid program.  (Doc. 19 ¶ 4; Doc. 26 at 4).

In the early 1990s, Region III (Philadelphia) CMS staff developed an initiative to drastically reduce utilization of physical restraints in nursing homes.  (Doc. 19 ¶ 6; Doc. 25 ¶ 8).  This initiative arose in response to new federal regulations delineating, *inter alia*, rights of nursing home residents to be free from restraints.  (Doc. 19 ¶¶ 5-6; Doc. 25 ¶¶ 7-8).  The Commonwealth established the Pennsylvania Restraint Reduction Initiative ("PRRI") to provide training to nursing facility staff

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 19, 25, 27, 29).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

on reduction of resident restraints.  (Doc. 19 ¶¶ 8-9; Doc. 25 ¶¶ 9, 11).  The Commonwealth contracted with Kendal Outreach LLC ("Kendal") to implement the PRRI program.  (Doc. 19 ¶ 11; Doc. 25 ¶¶ 12-13).  The training project began in 1996, and the Commonwealth claimed and received $3,001,536 in federal financial participation funds to help pay for this program from 1996 to 2011.  (Doc. 19 ¶ 13; Doc. 25 ¶¶ 9, 35).  At all times relevant hereto, the Commonwealth claimed PRRI costs as "Medicaid program administration" expenses.  (Doc. 19 ¶ 13; Doc. 25 ¶ 25).

In 2012, the Department of Health and Human Services' Office of Inspector General audited the Commonwealth's reimbursement claims for PRRI provider training.  (Doc. 19 ¶ 16; Doc. 25 ¶ 26).  The office issued a final report in July of 2012 that recommended disallowance of PRRI funding.  (Doc. 19 ¶¶ 16, 23; Doc. 25 ¶¶ 26-27).  On June 23, 2014, CMS issued a disallowance notice of the $3,001,536 in federal financial participation funds, noting its concurrence with the Office of the Inspector General.  (Doc. 19 ¶¶ 1, 23; Doc. 25 ¶¶ 6, 27).  The disallowance notice indicates that: (1) the Social Security Act allows states to claim federal reimbursement for miscellaneous costs as long as they are "found necessary by the Secretary for the proper and efficient administration of the State plan," 42 U.S.C. § 1396b(a)(7); (2) reimbursable costs must be "necessary and reasonable for the proper and efficient performance and administration of Federal awards," 2 C.F.R. Part 225, App. A. ¶ C.1.a; and (3) CMS issued a "State Medicaid Director Letter" dated December 20, 1994 ("1994 SMDL") explicitly stating that provider training is not a reimbursable administrative cost.  (Doc. 6 at 26-29; Doc. 25 ¶¶ 29-32).

On August 22, 2014, the Commonwealth appealed CMS's disallowance.  (Doc. 19 ¶ 24; Doc. 25 ¶ 36).  The Appeals Board issued a decision on April 13, 2015, sustaining the disallowance.  (Doc. 19 ¶ 35; Doc. 25 ¶ 37).  The Commonwealth consequently filed a complaint contesting the Appeals Board's decision on June 12, 2015 against the Department of Health and Human Services and Sylvia Matthews Burwell, Secretary of Health and Human Services (collectively "CMS").  (Doc. 1).  The parties have filed cross-motions (Docs. 17, 24) for summary judgment.  CMS has also moved to exclude the Commonwealth's Exhibit A (Doc. 28-1) to its reply brief in support of its motion for summary judgment.  (Doc. 32).  All three motions are fully briefed (Docs. 18, 26, 28, 33, 35, 37) and ripe for disposition.

## II.    <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  Courts are permitted to resolve cross-motions for summary judgment concurrently.  <u>See Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008); <u>see</u> <u>also</u> <u>Johnson v. Fed. Express Corp.</u>, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).

The cross-motions in the case *sub judice* seek judicial review under the Administrative Procedure Act ("APA"), and summary judgment is the "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." <u>La. Forestry Ass'n, Inc. v. Solis</u>, 889 F. Supp. 2d 711, 720 (E.D. Pa. 2012) (quoting

Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)), aff'd sub nom. La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor, 745 F.3d 653 (3d Cir. 2014).  The customary summary judgment standard does not apply.  Uddin v. Mayorkas, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012) (quoting UPMC Mercy v. Sebelius, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)).  Instead, the court applies the appropriate APA standard, to wit: the court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Under this narrow standard of review, the court will consider "whether the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' while being careful 'not to substitute [its] judgment for that of the agency.'"  Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  The agency must articulate a "rational connection between the facts found and the choice made."  Prometheus Radio Project v. FCC, 373 F.3d 372, 389-90 (3d Cir. 2004), as amended (June 3, 2016) (quoting State Farm, 463 U.S. at 43).

## III.   Discussion

### A.   Supplementation of the Administrative Record

As a threshold matter, the Commonwealth seeks to supplement the administrative record before the court with its Exhibit A.  (Doc. 28 at 1-4; Doc. 28-1).  Case law is clear, however, that our review must be based on the existing administrative record, not "some new record made initially in the reviewing court" or "post-hoc rationalizations" by the agency in question.  Christ the King Manor,

730 F.3d at 305 (quoting Rite Aid of Pa., Inc. v. Houstoun, 171 F.3d 842, 851 (3d Cir.

1999)).  We may look beyond the administrative record only "when the action is

adjudicatory in nature and the agency factfinding procedures are inadequate," or

"when issues that were not before the agency are raised in a proceeding to enforce

nonadjudicatory agency action."  NVE, Inc. v. Dep't of Health & Human Servs., 436

F.3d 182, 189 (3d Cir. 2006) (quoting Citizens to Preserve Overton Park, Inc. v.

Volpe, 401 U.S. 402, 415 (1971)).[2]  Neither circumstance exists *sub judice*.  Hence,

Exhibit A is an impermissible supplement to the administrative record.

As an end around the restrictions on record supplementation, the

Commonwealth requests that the court take judicial notice of Exhibit A.  (Doc.

37 at 2-4).  A judicially noticed fact is one that is not subject to reasonable dispute.

LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC., 287 F.3d 279, 290 (3d Cir.

2002).  But the Commonwealth is not asking the court to take notice of the fact of

the policy statement set forth in of Exhibit A, which is undisputed; it is asking the

court to *interpret* the text of Exhibit A.  The interpretation of the policy outlined in

Exhibit A is disputed by the parties and therefore cannot be judicially noticed.  The

court observes objectively, and without prejudice to either party, that Exhibit A

---

[2] Other circuits have recognized a second exception to the rule prohibiting
extra-record evidence.  This exception permits supplementation of the record when
evidence "arising after the agency action shows whether the decision was correct or
not."  Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); Am. Min. Cong. v. Thomas,
772 F.2d 617, 626 (10th Cir. 1985); (Doc. 37 at 4-6).  It applies only when subsequent
evidence clearly confirms the soundness of a regulation promulgated by an agency.
Am. Petrol. Inst. v. EPA, 540 F.2d 1023, 1034 (10th Cir. 1976); Amoco Oil Co. v. EPA,
501 F.2d 722, 729 n.10 (D.C. Cir. 1974).  The exception, which has not been
addressed by our Court of Appeals for the Third Circuit, does not apply to the
instant case which lacks a promulgated regulation.

could be interpreted as the type of "post-hoc rationalization" by an agency that is aptly excluded by a reviewing court.  See Christ the King Manor, 730 F.3d at 305 (quoting Rite Aid of Pa., 171 F.3d at 842).  The court declines to take judicial notice of the policy statement.  Consequently, we will grant CMS's motion (Doc. 32) to exclude the Commonwealth's Exhibit A.

### B.   The Commonwealth's Appeal

The Appeals Board affirmed disallowance of the Commonwealth's PRRI funding based on the 1994 SMDL.  Specifically, the Appeals Board held that the 1994 SMDL clearly prohibits reimbursement for provider training costs (like the PRRI program) as administrative expenses.  (Doc. 6 at 10-13).  Before addressing the Appeals Board's application of the 1994 SMDL, we must first consider whether the SMDL itself is entitled to deference.

### 1.   *The 1994 SMDL*

In Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-44 (1984), the Supreme Court of the United States articulated a two-step inquiry for determining the level of deference a court should give an agency's interpretation of its enabling statute.  First, the court must ask "whether Congress has directly spoken to the precise question at issue."  Id. at 842.  If congressional intent is clear, the inquiry ends and both the court and the agency "must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43.  Second, if the statute is ambiguous, the court must decide whether the agency's interpretation of the statute is "a permissible construction."  Id. at 843.

Chevron deference extends only to "agency action promulgated in the exercise of congressionally-delegated authority to make rules carrying the force of law." De Leon-Ochoa v. Attorney Gen. of U.S., 622 F.3d 341, 348 (3d Cir. 2010) (citing United States v. Mead Corp., 533 U.S. 218, 226-227 (2001)).  Policies, manuals, and guidelines articulating agency interpretations lack the force of law and are not entitled to Chevron deference.  Christensen v. Harris Cty., 529 U.S. 576, 587 (2000). Interpretive guidelines are "not official regulation promulgated after notice-and-comment rule making." Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 186 (3d Cir. 2000).  Likewise, statements of policy are exempted from formal rule making requirements.  Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003).  That the 1994 SMDL is a statement of policy without the force of law is beyond peradventure.  See Christensen, 529 U.S. at 587.[3]  Accordingly, the court will not assign Chevron deference to the 1994 SMDL.

When evaluating an agency decision that does not carry the force of law, courts apply a lesser degree of deference pursuant to Skidmore v. Swift & Co., 323 U.S. 134 (1944).  See Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 294-955 (3d Cir. 2012).  Under Skidmore, agency interpretations are "entitled to respect" based on their "power to persuade." Madison, 233 F.3d at 186 (quoting Christensen, 529 U.S. at 587).  Courts measuring persuasive power of a particular agency decision must examine "the thoroughness evident in [the agency's] consideration [and] the validity of its reasoning." Skidmore, 323 U.S. at 140.  Most importantly, courts must

---

[3] Because a statement of policy is exempt from rulemaking requirements, we reject the Commonwealth's incorrect characterization of the 1994 SMDL as an "invalid" legislative rule. See Chao, 327 F.3d at 227.

consider whether the agency's interpretation is consistent with other agency action, and reasonable, based on the "language and purpose" of the statute in question. See Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs, 685 F.3d 259, 284 (3d Cir. 2012) (quoting Cleary ex rel. Cleary v. Waldman, 167 F.3d 801, 808 (3d Cir. 1999)).

Courts only engage in deference analysis under Skidmore when the statute at issue is ambiguous. Hagans, 694 F.3d at 295 (citing U.S. Army Corps of Eng'rs, 685 F.3d at 284). Our overarching goal is to ascertain congressional intent. Id. When a statute does not explicitly define disputed language, and Congress has delegated authority to an agency to define the language at issue, we must employ a deference analysis of the agency's interpretation. See Fed. Labor Relations Auth. v. U.S. Dep't of Navy, 966 F.2d 747, 752 (3d Cir. 1992).

The statute at issue states in pertinent part: "the Secretary . . . shall pay to each State which has a plan approved . . . an amount equal to 50 per centum of the remainder of the amounts expended . . . as found necessary by the Secretary for the proper and efficient administration of the State plan." 42 U.S.C. § 1396b(a)(7). The parties do not dispute that Congress has not spoken on the question at issue here: what constitutes "necessary" costs expended for the "administration" of a Medicaid plan. (Doc. 26 at 22; Doc. 28 at 7). As set forth above, Congress has quite clearly delegated this determination to the agency: the statute expressly delegates the necessity determination to the Secretary. See 42 U.S.C. § 1396b(a)(7). Hence, the court must review the agency interpretation of the statute, see Fed. Labor Relations Auth., 966 F.2d at 752, and we employ Skidmore in doing so.

The 1994 SMDL provides in pertinent part:

> [T]he overarching policy guiding [reimbursement of administrative costs] decisions is that the costs must be "found necessary by the Secretary for the proper and efficient administration of the State plan." [CMS] exercise[s] the Secretary's authority to determine what is necessary and proper for the efficient administration of the State plan.

(Doc. 6 at 71-72).  The letter then proceeds to enumerate allowable administrative costs.  (Id.)  It expressly states that allowable administrative costs "may not include the overhead costs of operating a provider facility, such as the supervision and training of providers."  (Id.)

The 1994 SMDL reflects a reasonable and considered interpretation of the governing statute.  As the Appeals Board observed in its decision *sub judice*, the letter finds support in prior agency decisions; indeed, the 1994 SMDL states its intent to "reiterate [CMS's] long-standing policy on allowable administrative costs." (Doc. 6 at 68).  The 1994 SMDL also sets forth an unobjectionable interpretation of the governing statute, 42 U.S.C. § 1396b(a)(7), based on the "language and purpose" thereof.  See U.S. Army Corps of Eng'rs, 685 F.3d at 284 (quoting Cleary, 167 F.3d at 808).  The agency interprets the phrase "necessary . . . for the proper and efficient administration of the State plan" to include only those costs "directly related to the administration of the Medicaid program."  (Doc. 6 at 68).  As examples of claimable administrative costs, CMS identifies Medicaid outreach, eligibility determinations, intake processing, and information system development and operation.  (Id. at 69).  CMS persuasively differentiates between costs which enhance administration and those which enhance quality of medical care, such as provider training costs.  (Id.

at 72).  Accordingly, we conclude that the 1994 SMDL is entitled to deference under Skidmore.

### 2.    *The Appeals Board's Decision*

Having determined that the 1994 SMDL is controlling, we must evaluate the Appeals Board's decision relying on it.  As noted *supra*, a reviewing court will set aside an agency decision only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2).  The Commonwealth asserts that the Appeals Board's application of the 1994 SMDL works an arbitrary and capricious result.  The Commonwealth also asserts that the Appeals Board abused its discretion in denying discovery and ignored controlling law in affirming a disallowance period of more than three years.  The court will address these issues *seriatim*.

### 1.    Application of the 1994 SMDL

The Commonwealth oppugns the Appeals Board for furthering a policy which allows reimbursement of PRRI costs when claimed through one mechanism by providers, but disallows them when claimed through another mechanism by the state.  (Doc. 6 at 13-14 (citing 42 U.S.C. § 1396a(a)(13)(A); 42 C.F.R. § 447.253(b)(1)); Doc. 18 at 20-21 & n.9).  The parties seem to agree that PRRI training costs could be reimbursed in part through the "provider rate-setting" methodology (a separate cost-claiming mechanism) if paid *by medical providers*.  (See Doc. 18 at 20-21; Doc. 35 at 19-21 & n.9).  It is also undisputed that the Commonwealth contracted with and paid Kendal directly, such that the Commonwealth cannot factor the PRRI training costs into the rate-setting process.  (See Doc. 18 at 20-21; Doc. 35 at 19-21

& n.9).  The Commonwealth remonstrates *in essentia* that this result is "arbitrary" because it deprives the Commonwealth of a reimbursement mechanism.  (Doc. 18 at 20-23).

Under the arbitrary and capricious standard, the court must not "substitute its judgment for that of the agency."  Prometheus Radio Project, 373 F.3d at 389 (quoting Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43).  We must uphold an agency decision so long as the agency "articulated a satisfactory explanation for" its decision.  Id.

We observe preliminarily that the administrative record belies the Commonwealth's suggestion that the Appeals Board fails to acknowledge or "explain" its reimbursement differentiation.  (See Doc. 18 at 20; Doc. 28 at 10).  The Appeals Board provides a rational and robust explanation for allowing provider-paid training costs to be reimbursed through the provider payment rate-setting mechanism alone.  See Prometheus Radio Project, 373 F.3d at 390.  The Appeals Board explains that "[u]nless the rate system is utilized, a state cannot meet its responsibility to determine whether the rates are reasonable and adequate to meet the costs [that] must be incurred by efficiently and economically operated providers."  (Doc. 6 at 14 (internal quotations omitted)).  It also observes that this differentiation is necessary to "prevent duplicate program payment for the same activities."  (Id.)

The Appeals Board provides a satisfactory explanation for CMS's policy of reimbursing provider training costs through provider payment rate-setting but not as administrative expenses.  See Christ the King Manor, 730 F.3d at 305.  As the

Appeals Board observes, it is not CMS policy but the Commonwealth's own choices which preclude reimbursement: "That [the Commonwealth] funded the training so that the providers themselves did not incur the costs . . . does not change the nature of the training as provider training or otherwise convert it into an administrative activity." (Doc. 6 at 14-15). We reject the Commonwealth's characterization of the Appeals Board's decision as "arbitrary."[4]

### b.   Denial of Discovery

The Commonwealth alleges that the Appeals Board abused its discretion in denying a discovery request that purportedly would have demonstrated CMS's express or implied approval of the disputed costs. (Doc. 18 at 23-25; Doc 28 at 14-16). The Appeals Board denied several of the Commonwealth's discovery requests, but the Commonwealth takes issue with only one. (Doc. 28 at 10). Specifically, the Commonwealth requested that CMS Region III produce all documents regarding cost-sharing between the Commonwealth and the federal government concerning PRRI. (Doc. 6 at 39; Doc. 28 at 10). The Appeals Board denied this request because it was based on "conjecture" and amounted "to no more than a fishing expedition." (Doc. 6-2 at 2). The Commonwealth asks that the instant action be remanded so that the record may be further developed. (Doc. 18 at 25).

---

[4] The Commonwealth also contends that it did not receive effective notice of this differentiation. (Doc. 18 at 12-15; Doc. 28 at 4-6). It avers that states must have fair notice of the conditions of a federal grant. See Lewis v. Alexander, 685 F.3d 325, 347 (3d Cir. 2012) (citing Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)); (Doc. 18 at 12; Doc. 28 at 4). This contention is without merit. The Commonwealth was squarely on notice that its right to reimbursement for Medicaid costs was limited. See 42 U.S.C. § 1396b(a); (Doc. 35 at 4-7). The statute at issue, quoted *supra*, grants authority to the Secretary—not the states—to determine which administrative costs are allowable. See 42 U.S.C. § 1396b(a)(7).

The Appeals Board may request additional documents to promote development of the record and may order parties to provide relevant information. See 45 C.F.R. §§ 16.9, 16.13. The Appeals Board's practice manual provides that document requests by parties "must be particularized and based on a showing of need." (Doc. 6-2 at 1). The Appeals Board may grant discovery at its discretion. See 45 C.F.R. §§ 16.9, 16.13; (Doc. 6-2 at 1). In reviewing the Commonwealth's instant request, we are mindful that courts generally remand to the agency only when the administrative record does not support the agency action, the agency has not considered all relevant factors, or the court cannot evaluate the action based on the record. C.K. v. N.J. Dep't of Health & Human Servs., 92 F.3d 171, 182 (3d Cir. 1996) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

The Appeals Board determined that the documents requested by the Commonwealth were neither relevant nor dispositive. (See Doc. 6-2 at 1-2). The court agrees. The Commonwealth's request was both non-specific and speculative, rendering it procedurally deficient. The Appeals Board's denial of the request on substantive grounds is also appropriate because the requested documents are ultimately inapposite. The question before the Appeals Board, and now before this court, is whether the Commonwealth properly applied for reimbursement of PRRI training costs. The hypothetical documents sought by the Commonwealth would not change the fact that the Commonwealth structured its PRRI program in a manner that precludes reimbursement of its costs. (See Doc. 6-2 at 1-2). The Appeals Board also correctly resolved that discovery is unnecessary: per agency policy, all CMS documentation concerning PRRI cost-sharing is available to the

public (and thus the Commonwealth) through the agency's online database.  (<u>Id.</u>)

There is no basis to remand for additional discovery.  <u>See</u> 5 U.S.C. § 706(2)(A); 45

C.F.R. §§ 16.9, 16.13; <u>C.K.</u>, 92 F.3d at 182.  The court accordingly denies the

Commonwealth relief on this ground.

c.  <strong><u>Interpretation of the Grants Administration Manual</u></strong>

The Commonwealth posits that, assuming proper disallowance *arguendo*,

the disallowance period must be limited to three years.  (<u>See</u> Doc. 18 at 25-27; Doc.

28 at 12-13).  The Commonwealth contends that a repealed Department of Health

and Human Services policy document, the Grants Administration Manual, was

controlling law during most of the disallowance period.  (Doc. 18 at 25).  CMS does

not dispute that this manual was in effect at all relevant times.  (Doc. 6 at 18 n.7; <u>see</u>

Doc. 26 at 28-29).

The Grants Administration Manual provides that the disallowance period

will be calculated based on the applicable record retention rules for the affected

organization.  (Doc. 6-3 at 66).  During the relevant time period (1996 to 2011) the

record retention period for the Commonwealth was three years.  (Doc. 18 at 25-26;

Doc. 26 at 28-29).  The Appeals Board concludes, however, that the manual does not

limit disallowance to the record retention period; rather, it provides an alternate

method of calculating the disallowance period applicable when the evidence does

not permit an accurate computation.  (<u>See</u> Doc. 6 at 19).  The Appeals Board

observes that, in this case, the evidence permits an accurate calculation beyond the

record retention period.  (<u>Id.</u>)  The Commonwealth alleges that the Appeals Board's

15

interpretation of the manual is legally incorrect and that the court should reduce the disallowance period to three years. (Doc. 18 at 25-27).

Agency manuals generally lack the force of law. <u>Mercy Catholic Med. Ctr. v. Thompson</u>, 380 F.3d 142, 154 (3d Cir. 2004). An internal manual may hold the force of law if it is intended as a legislative rule that will have "substantive adverse impact on [a] challenging party." <u>See Chao</u>, 327 F.3d at 227 (3d Cir. 2003). A manual that is not a promulgated rule and only intended for the use of an agency's employees is properly characterized as a judicially unenforceable agency policy. <u>See Gatter v. Nimmo</u>, 672 F.2d 343, 347 (3d Cir. 1982).

The Grants Administration Manual is not a legislative rule that binds the Appeals Board. It does not impose requirements on adverse parties; only agency auditors use the manual. <u>See Chao</u>, 327 F.3d at 227-28; (Doc. 26 at 30-31). The agency did not publish relevant portions of the manual in the Federal Register and did not promulgate the manual through formal rule making. <u>See Gatter</u>, 672 F.2d at 347; (Doc. 18 at 26; Doc. 26 at 31). Accordingly, the manual is not binding on the agency.

We thus examine the Appeals Board's disallowance computation under the deferential "arbitrary or capricious" standard. 5 U.S.C. § 706(2)(A). The record reflects that the *Commonwealth* calculated the disallowance amount based upon its own records, and CMS relied on the Commonwealth's records in setting the disallowance period. (Doc. 6 at 19). The court finds that the disallowance calculation is not arbitrary but based on substantial evidence. (<u>See</u> Doc. 6-5 at 95-99). The court will sustain the disallowance for the entire period from 1996 to 2011.

IV.     **Conclusion**

The court will grant CMS's motion (Doc. 24) for summary judgment and deny

the Commonwealth's motion (Doc. 17) for summary judgment.  An appropriate

order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     March 13, 2017